UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| CORDIE B. DANIELS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case # 1:19-cv-267-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
| Defendant. § | |

## INTRODUCTION

Plaintiff Cordie B. Daniels ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 6, 14. Plaintiff also filed a reply. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion (ECF No. 6) is **GRANTED,** and the Commissioner's motion (ECF No. 14) is **DENIED.**

## BACKGROUND

Plaintiff protectively filed her DIB application on April 18, 2015, alleging disability beginning February 7, 2015 (the disability onset date). Transcript ("Tr.") 17. Plaintiff alleged disability due to: "(1) chronic depression; (2) history of blood clots d/t Factor 5 Leiden; (3) post traumatic stress syndrome; and (4) anxiety and panic attacks." Tr. 190. Plaintiff's application was denied initially on June 16, 2015, after which she requested an administrative hearing. Tr. 65, 91.

On October 20, 2017, a hearing was held before Administrative Law Judge Hortensia Haaversen (the "ALJ"). Tr. 17, 32. The ALJ presided over the hearing from Falls Church, Virginia. Tr. 17. Plaintiff appeared and testified in Buffalo, New York, and was represented by Nicholas Di Virgilio, an attorney. *Id*. Bernard Preston, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. On April 27, 2018, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. 17-27. On January 3, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. The ALJ's April 27, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her April 27, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018;

2. The claimant has not engaged in substantial gainful activity since February 7, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*);

3. The claimant has the following severe impairments: Factor V Leiden, Depression, and Post-Traumatic Stress Disorder ("PTSD") (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. The claimant has the residual functional capacity to perform medium work defined in 20 CFR 404.1567(c)[1] except the claimant can frequently perform all postural activities except she should never climb ladders, ropes, or scaffolds.  The claimant must avoid all exposure to hazards such as dangerous machinery and unprotected heights.  The claimant is also limited to following and understanding simple directions and instructions, performing simple tasks independently, managing a regular schedule, learning new tasks, performing complex tasks independently. Additionally, she is limited to low stress jobs, defined as occasional decision making and occasional interaction with coworkers and supervisors;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born on January 23,1971 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).;

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 7, 2015, through the date of this decison (20 CFR 404.1520(g)).

Tr. 17-26.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on April 7, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 26.

## ANALYSIS

Although Plaintiff asserts two points of error, both points claim that the ALJ erred in evaluating the opinion evidence. *See* ECF No. 6-1 at 1, 13-24. Specifically, Plaintiff takes issue with the ALJ's assignment of weight to the opinion of consultative examining psychologist Gregory Fabiano, Ph.D. ("Dr. Fabiano"), and the opinion of Plaintiff's treating psychiatrist Andrew Reichert, M.D. ("Dr. Reichert"). *Id*. at 13-24. In the alternative, Plaintiff argues that the ALJ erred by failing to account for the stress limitation in Dr. Fabiano's opinion. *Id*. at 20. The Commissioner responds the ALJ's RFC findings—including her assessment of the opinions of consultative examining psychologist Dr. Fabiano and Dr. Reichert—are supported by substantial evidence. *See* ECF No. 14-1 at 6.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

On June 23, 2015, after interviewing Plaintiff and administering a mental status examination, Dr. Fabiano assessed major depressive disorder, recurrent episodes; panic disorder; and PTSD. Tr. 302-05. He found that Plaintiff's prognosis was fair, given her recent initiation of more intensive mental health treatment, and opined that there was no evidence that Plaintiff was limited in her ability to follow and understand simple directions and instructions; perform simple tasks independently; maintain a regular schedule; learn new tasks; perform complex tasks independently; or make appropriate decisions. Tr. 305. He further opined that Plaintiff had "moderate limitations" in the ability to maintain attention and concentration, relate adequately with others, and appropriately deal with stress. *Id*.

In September 2017, Dr. Reichert completed a "Medical statement" form supplied by Plaintiff's attorney. Tr. 403-06. In the essentially check-box form, Dr. Reichert indicated that Plaintiff had: "Moderate" restrictions in activities of daily living and "Moderate" difficulty in maintaining social functioning; deficiencies of concentration, persistence, or pace; repeated episodes of deterioration or decompensation; and a complete inability to function independently outside of her home due to panic attacks. *Id*. Dr. Reichert indicated that Plaintiff was "Moderately Impaired" in most "Work Limitations," except six areas where Dr. Reichert indicated that Plaintiff was "Markedly Impaired," including "[t]he ability to carry out very short and simple instructions," among others. Tr. 403-05. Notably, the form does not define "Moderate" or any of the other listed degrees of limitation for any of the "General Limitations" found on the form. *See id*. The form was completed through check marks and circling, without any supporting explanation or evidence for the responses, and Dr. Reichert signed the form without comment. Tr. 405-06.

The ALJ gave "great weight" to Dr. Fabiano's June 2015 (Tr. 22-23) and "little weight" to Dr. Reichert's September 2017 opinion (Tr. 24). As noted above, Dr. Reichert was Plaintiff's treating psychiatrist. Plaintiff argues that Dr. Reichert's opinion was entitled to controlling weight. *See* ECF No. 6-1 at 13-24. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, she must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Furthermore, as long as the ALJ is careful to explain his decision, he is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669,

at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions").

Here, the ALJ considered and assessed the treatment and examination notes of record from both before and during the relevant period. Tr. 20-23. As the ALJ found, the evidence established that during the relevant period Plaintiff's mental impairments were routinely managed through prescribed medication, and Plaintiff said that the medication did not cause significant side effects. Tr. 23 (citing Tr. 261-65, 338, 342, 347, 364, 368, 403, 451, 462-63, 469, 471, 489-90, 496, 498). The ALJ also noted that despite Plaintiff's allegations that her mental impairments interfered with her ability to perform basic mental work-related functions, mental status examinations, including those from Dr. Reichert, indicated generally unremarkable mental functioning. Plaintiff showed no signs of significant mental distress; she had a cooperative attitude and good eye contact; and she had intact memory, fair concentration, clear and appropriate speech, no psychomotor slowing, and no suicidal or homicidal ideation. Tr. 22-23 (citing Tr. 264, 338-39, 344, 348-49, 366, 387, 428, 443, 449, 460-61, 464, 470, 478-79, 490-91, 493-94).

In giving little weight to Dr. Reichert's September 2017 opinion, the ALJ. recognized that Dr. Reichert was a treating source, a factor weighing in favor of his opinion. Tr. 24. *See* 20 C.F.R. § 404.1527(c)(2). However, the ALJ found that Dr. Reichert's opinion of marked limitations in the ability to carry out very short and simple instructions (among other areas of functioning) were "extreme" compared to his own treatment notes, as well as the other objective evidence. As noted above, examinations and medical findings of record showed that Plaintiff consistently displayed no signs of mental distress; a cooperative attitude; good eye contact; an appropriate mood; a full range affect; orientation to time, place, and person; intact memory; fair concentration; clear and appropriate speech; and no psychomotor slowing.

This lack of supportability and consistency are all good reasons for discounting Dr. Reichert's opinion. *See* 20 C.F.R. § 404.1527(c)(4) (opinions that are inconsistent with other evidence may be given less weight); 20 C.F.R. § 404.1527(c)(2) (describing the requirements for controlling weight)); *id*. at § 404.1527(c)(3)-(4) (opinions that are not well-supported by objective medical examination findings, lack explanation for the basis of the limitations they include, and are inconsistent with other evidence of record may be given less weight); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (deference to treating source's opinion was not required where treating physician issued opinions that were not consistent with his own treatment notes and other substantial evidence in the record).

With respect to the assignment of great weight to Dr. Fabiano's opinion, the ALJ noted that the opinion was consistent with, and well-supported by, Dr. Fabiano's objective mental status examination findings, as well as the mental health treatment notes and mental status examinations discussed above. Tr. 22-23. Consistent with the records cited by the ALJ, Dr. Fabiano's examination revealed that, although depressed and tearful, Plaintiff was cooperative; had adequate social skills, grooming, posture, and eye contact; had fluent speech with adequate expressive and receptive language; had coherent and goal-directed thought processes with no evidence of abnormal thinking; was fully oriented; had average cognitive functioning; and had fair insight and good judgment. Tr. 303-04. Upon testing, Dr. Fabiano found that Plaintiff's attention, concentration, and memory were no more than mildly impaired. Tr. 304. Thus, the ALJ reasonably found that Dr. Fabiano's opinion was consistent with, and supported by, his own examination findings and the other treatment and examination findings of record. *See* 20 C.F.R. § 404.1527(c)(3)-(4) (opinions that are well-supported by objective medical findings and consistent with other evidence of record may be given significant weight).

Dr. Fabiano and Dr. Reichert—both qualified, acceptable medical sources——provided contradictory opinions about which work-related mental functional limitations were appropriate for Plaintiff. However, the ALJ was not required to simply copy the limitations contained in either opinion. *See* 20 C.F.R. § 404.1527(c)(4) (greater weight can be given to opinions that are consistent with other evidence of record); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016) (ALJ properly afforded more weight to non-treating source than treating source because the non-treating source's opinion was consistent with the objective medical evidence in the record). A claimant's RFC is assessed based on all relevant evidence. *See* 20 C.F.R. § 404.1545(a)(3). At the administrative hearing level, the formulation of RFC is solely the province of the ALJ. *See id.* § 404.1546(c).

Furthermore, where such a conflict exists, the Court will defer to the ALJ's resolution of it "and accept the weight assigned to the inconsistent opinions as a proper exercise of the ALJ's discretion." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order); *see also Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (observing that, under the substantial evidence standard, the fact that the evidence may arguably be reconciled to a claimant's favor is "not probative of anything" as long as the ALJ's different interpretation was reasonable). While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("Under this very

deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.").

Based on the foregoing, the Court finds there was nothing improper in the ALJ's analysis of the conflicting opinion evidence. The ALJ explained how the evidence of record supported her findings about Plaintiff's impairments and limitations, including the conflicting medical opinions about Plaintiff's mental functioning and an evaluation of the consistency of Plaintiff's subjective symptom complaints with the other evidence of record. Tr. 21-25.

Next, the Court considers Plaintiff's argument in the alternative. Plaintiff contends that the ALJ did not fully account for the stress limitations in Dr. Fabiano's opinion; failed to make the necessary specific findings about the nature of Plaintiff's stress; and failed to perform a "highly individualized" stress evaluation, as the regulations require. *See* ECF No. 6-1 at 21-24 (citing Tr. 21, 23). In response, the Commissioner argues that by limiting Plaintiff to "low stress jobs" (Tr. 21), the limitations fashioned by the ALJ were consistent with Dr. Fabiano's limitations. *See* ECF No. 14-1 at 10. According to the Commissioner, a plain reading of the ALJ's decision shows that she "individualized" stress limitations and expressed them to the vocational expert (Tr. 21, 56-58), and these limitations directly addressed Plaintiff's statements about the stressful requirements of her prior job as a registered nurse. *See* ECF No. 14-1 at 10. The Court disagrees. As explained below, the Court finds that Plaintiff's argument in the alternative has merit.

As Plaintiff notes in her brief, Dr. Fabiano opined that Plaintiff had moderate limitations maintaining attention and concentration, relating adequately with others, and appropriately dealing with stress. *Id.* at 21 (citing Tr. 305). Other than noting Dr. Fabiano's opinion that Plaintiff had moderate limitations in appropriately dealing with stress (Tr. 23) and a brief mention that Plaintiff said she experienced "significant stress" dealing with her three children, all of whom have "mental

11

health issues" (Tr. 22), the ALJ made no specific findings concerning the nature of Plaintiff's stress, the circumstances that trigger it, and how those factors affect her ability to work. *See* SSR 85–15, at *5 (emphasizing the need to carefully evaluate a claimant's ability to deal with stress in the workplace); *see also Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y.2006); *Sheffield v. Astrue*, No. 11–CV–1176, 2012 WL 5966610, at *2 (N.D.N.Y. Nov. 28, 2012) (remanded because the ALJ failed to adequately evaluate Plaintiff's ability to handle stress in making his RFC determination).

Although the ALJ limited Plaintiff to "low stress" jobs (Tr. 21), the ALJ's failure to make specific findings about Plaintiff's stress triggers and failure to explain the "low-stress" limitations included in the mental RFC in accordance with the considerations articulated in SSR 85–15 is an error that requires remand. Accordingly, the Court will remand this case for the ALJ to consider the extent, if any, that Plaintiff's difficulties with stress impact her ability to perform the non-exertional demands of unskilled, competitive, remunerative work on a sustained basis.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

_/s/ Don D. Bush_
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE